FILED

2012 Mar-14  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DONNA MARIE BEDGOOD,

      PLAINTIFF,

VS.                               CASE NO.: CV-11-J-2825-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

## Procedural Background

The plaintiff applied for disability insurance benefits due to a herniated disc, pain and stiffness which limits her bending, lifting, standing and sitting (R. 121). This application was denied (R. 64-68) and the plaintiff requested a hearing, which was held by an administrative law judge ("ALJ"), on April 14, 2010 (R. 36-60). The ALJ thereafter rendered an opinion finding that the plaintiff was not under a disability (R. 16-31). The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied on June 13, 2011 (R. 1-3). The ALJ's decision thus

became the final order of the Commissioner of Social Security.  *See* 42 U.S.C.§ 405(g).  This action for judicial review of the agency action followed (doc. 1).

The court has considered the record and the briefs of the parties.  For the reasons set forth herein, this case is **REVERSED and REMANDED** to the Agency to further develop the record as instructed herein.

### Factual Background

The plaintiff was born March 23, 1963 (R. 42) and completed the twelfth grade in school (R. 43).  The plaintiff has past relevant work as manager of a seafood department in a grocery store, which is considered light, skilled work (R. 57).  She last worked in May 2008 when she sustained injuries to her back while in the freezer at work (R. 55).  According to the plaintiff, the discs in her back which had been bulging at the time herniated (R. 43).  She was no longer able to do her job (R. 43). Since that time, the plaintiff had her thyroid removed due to cancer (R. 44) and has had several rounds of radiation because of it (R. 44, 48).  She was scheduled to have radiation for the third time shortly after the date of the hearing (R. 53).

According to the plaintiff, she can only stand for 20 to 30 minutes if she forces herself (R. 44, 46).  She can sit until her feet start tingling, which is about 30 minutes (R. 46).  At one time, her doctor limited her to lifting no more than 15 to 20 pounds (R. 44).  She can walk about two and one-half blocks (R. 46).  After her disc

2

herniated, Dr. Maher told her she could not return to work (R. 44). The workers'
compensation carrier had not approved the surgery Dr. Maher wanted to do as of the
date of the hearing[1] (R. 45). Her pain is about an 8 out of 10 on a daily basis but pain
medication lowers it to about a 6 out of 10 (R. 47, 51). She takes only Tylenol or
Aleve, four times a day, for pain because she does not want to become addicted to
pain medication (R. 51, 52).

The plaintiff also suffers from bipolar disorder (R. 47), asthma (R. 52), and
sleep apnea (R. 52-53).

On a daily basis, the plaintiff watches TV and gives her mother a ride home
from work (R. 49). She goes to doctors' appointments and sometimes sweeps or
mops her home (R. 50, 54). She does laundry and household chores by starting and
stopping all day.   The plaintiff stated she does a little bit at a time (R. 54).

The Vocational Expert ("VE") testified that in addition to plaintiff's prior work
as a seafood manager, her other relevant work was as a deli worker, which was
medium (R. 57). Her acquired skills would only transfer to other grocery industry
jobs (R. 57). The VE testified that if the plaintiff were limited to sedentary work with
mild to moderate pain, she could not perform her past relevant work (R. 58).

---

[1]The plaintiff testified at the hearing that she was still on medical leave from Food World
and her workers' compensation claim was still pending (R. 53-54).

However, such an individual could work as an order clerk, assembler, inspector, or sorter (R. 58).

The plaintiff's medical records from the relevant time period reflect that she was seen by Dr. Mark Elkus in 2005 for back pain (R. 170). His records reflect that the plaintiff had minimal degenerative changes, at L4-5 and L5-S1 with disc space narrowing at L5-S1 (R. 170, 246). She also had mild degenerative changes in her thoracic spine (R. 170). Upon injury to her back in 2005, Dr. Elkus treated the plaintiff conservatively (R. 171). The records of Dr. Sam Eisa, plaintiff's regular treating physician, reflect notations of chronic back pain from this time forward (R. 272-273, 280-282, 285-286).

In July 2007 Dr. Robert Poczatek saw the plaintiff due to back pain for purposes of workers' compensation arising from her 2005 work related injury (R. 191-192). He placed the plaintiff at Maximum Medical Improvement at that time and suggested a referral for purposes of creating permanent work restrictions (R. 191). Based on the Functional Capacities Evaluation ("FCE") results, Dr. Poczatek recommended that the plaintiff be restricted to light duty and noted she had discomfort in her back related to lumbar paraspinal muscle spasms (R. 193). Problems with bilateral hand paresthesias was also noted, and the plaintiff reported

generalized weakness in her grip strength (R. 193).  Physical examination findings were consistent with carpal tunnel syndrome (R. 193-194).

In January 2008 the plaintiff was seen again because of complaints of ongoing low back pain which had increased in recent months (R. 195).  The record reflects the plaintiff had marked low back pain with sharp radiating pain into her right foot (R. 195).  The plaintiff reported her pain was made worse by prolonged walking and leaning forward (R. 195).  Her pain at the time was a 7 out of 10 (R. 195).  Upon examination, moderate tenderness of her lumbar paraspinal muscles was noted, and she was prescribed narcotic pain medication and referred for an MRI (R. 195).  The plaintiff was returned to work with a restriction against lifting more than 15 pounds and no frequent bending (R. 195).  In February the plaintiff reported pain ranging from an 8 to 9 on a 10 point scale (R. 197).  Moderate tenderness was again noted and she was taken off work due to her pain being significantly aggravated (R. 197).

The March 2008 MRI found a mild annular bulge at L4-5 and mild facet joint hypertrophic change with right-sided joint effusion; a minimal annular tear into the left L4-5 foraminal zone; and a mild facet joint degenerative change at L5-S1 (R. 199).  Upon return to Dr. Poczatek that month, he noted the plaintiff again complained of increased pain, rating it as high as a 9 out of 10 (R. 200).  He noted the MRI results and that the plaintiff's pain increased with prolonged walking, standing

and leaning forward (R. 200).  He found marked tenderness upon examination, and decreased range of motion in her back due to pain (R. 200).  Dr. Poczatek opined the plaintiff suffered from lumbar radiculopathy and muscle spasms, and recommended epidural injections and continuing narcotic pain medication (R. 200).  The plaintiff received the epidural injections (R. 202).  The records from the April 2008 injection reflect the plaintiff's diagnoses of lumbar degenerative disc disease with spondylosis, lumbar  radiculitis, and lumbar facet syndrome (R. 202).

The plaintiff was also seen by Dr. Poczatek in April 2008, at which time she reported that she still had pain at a 9 out of 10 level (R. 205).  Her examination was essentially unchanged, and Dr. Poczatek stated that given the lack of benefit from the two epidural injections done, no further intervention procedures were appropriate (R. 205).  Rather, he recommended plaintiff have a TENS unit and bracing to see if that reduced her pain (R. 205).  He also referred the plaintiff for another FCE to again create permanent work restrictions (R. 205).

Following her fall in May 2008 the plaintiff was again sent for an MRI which found mild degenerative changes and right foraminal disc herniation at L4-5, the right L4 nerve root sheath was significantly displaced, and there was a slight bulge at L5-S1 with mild to moderate left foraminal narrowing at that level (R. 207-208).  Dr. Poczatek recommended the plaintiff return to Dr. Maher for surgical intervention (R.

209).  Dr. Poczatek prescribed narcotic pain medication and stated he would keep the plaintiff off work until she was seen by Dr. Maher (R. 209-210).

The plaintiff was in a car accident on August 5, 2008 (R. 227-229).  A CT of her lumbar spine that date states "[f]indings worrisome for spondylodiscitis at the L4-5 disc space with end plate erosions" (R. 230).  The plaintiff also returned to Dr. Maher in August 2008, at which time she reported 10 out of 10 pain, incapacitating back pain and pain radiating down her right leg (R. 214).  Dr. Maher recorded the amount of pain medication the plaintiff was taking and stated that she was unable to work and barely able to walk (R. 214).  She was noted to be in obvious distress (R. 214).  Upon examination, some loss of feeling was noted in both legs, and the plaintiff had zero range of motion in her lumbar spine with severe tenderness of her paraspinal muscles (R. 215).  Various surgical options were discussed, but Dr. Maher stated he was "apprehensive about considering any type of surgery at the current point given the overwhelming symptoms she is experiencing.  We will see how she responds to block..." (R. 215).

In August 2008 the plaintiff also was scheduled for a thyroidectomy due to a mass on her thyroid, for which Dr. Eisa referred the plaintiff to Dr. Randy Real (R. 261, 340).  Dr. Eisa's records also reflect that the plaintiff has asthma, bipolar disorder, hyperaldosteronism and hypertension, both fairly well controlled, in

addition to ongoing back pain (R. 272, 273).  She reported to Dr. Eisa that the August

5, 2008, car accident was because she passed out while driving (R. 272).  He noted

she had not had another syncope episode (R. 273).

On September 4, 2008, the plaintiff was seen by Dr. Sean O'Malley for

evaluation of her back pain (R. 239-240).  Dr. O'Malley noted that plaintiff's MRI

reflected "significant collapse of the L4-5 disc with edema in the bone" (R. 240, 248).

He opined this was the result of either infection, which he doubted, or severe

degenerative change (R. 240, 241).  She was seen again five days later, with

persistent pain and commented that the brace was not helping anymore (R. 238).  Dr.

O'Malley opined that her complaints were consistent with discitis, for which she

underwent a disc biopsy and infectious disease counseling (R. 237, 238).  Although

the biopsy found no infectious disease, the plaintiff was then referred to Dr. Bruce

Tucker, M.D., with a diagnosis of suspected spondylodiscitis (R. 255).

In October 2008 the plaintiff had an additional MRI of her lumbar spine which

found osteomyelitis and diskitis at the L4-5 disk space and spondylolisthesis[2] at the

L5-S1 level (R. 406, 456).  X rays that month found subchondral erosion involving

---

[2]Spondylolysis is a stress fracture in one of the bones of the spinal column.  When a stress
fracture weakens the bone to the point it is unable to maintain its proper position, and the
vertebrae shifts out of place, the condition becomes spondylolisthesis rather than spondylolysis.
Nerve damage, including leg weakness, may result from pressure on the nerve roots and cause
pain radiating down the legs.  http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002240/

the disc space at L4-5 and mild loss of the L5 vertebral height as well (R. 456). When seen by Dr. Maher at the beginning of the month, he noted that the plaintiff was in obvious discomfort and walking with a cane (R. 454). Meanwhile, the plaintiff's thyroid was removed on October 24, 2008, and biopsy confirmed thyroid cancer (R. 348, 415, 419, 421). She was then referred for radiation by Dr. Real (R. 422).

The plaintiff had an additional x-ray of her spine at the end of November 2008 which found a persistent abnormal appearance at L4-L5, specifically the subchondral erosion of the inferior end plate of L4 and the superior end plate of L5. Upon follow-up with Dr. Maher, the plaintiff was again noted to have significant back pain, significant collapse of the disc space at L4-5 and resolving spondylodiskitis (R. 460). Dr. Maher also opined that the acute disc herniation in May 2008 was the result of the prior discogram performed in April 2008, when the plaintiff had epidural injections (R. 460). He recommended the plaintiff have a L4/5 posterior lumbar interbody fusion and informed the workers' compensation carrier of the same (R. 460-461).

The plaintiff was referred by Social Security for a psychological consultation in November 2008 (R. 428). When asked why she could not work by William Beidleman, Ph.D., the plaintiff told him about her back problems (R. 428). She stated

her bipolar disorder was under control and her physical problems kept her from working (R. 428-430).

In March 2009 the plaintiff was hospitalized to receive radioactive iodine (R. 473). The plaintiff was again seen by Dr. Maher in April 2009 (R. 462). He noted that the plaintiff had "pretty severe limitation of movement" and severe back pain with any activity (R. 462). Dr. Maher again recommended a disc fusion, but also discussed pain management with the plaintiff (R. 462). He again sought approval from workers' compensation (R. 487). A note in the record from September 2009 reflects that the plaintiff's "case is tied up right now with lawyers..." (R. 494).

The plaintiff was again hospitalized in October and December 2009 for further radioactive iodine therapy (R. 477, 497-499).

The records reflect that at some point prior to March 19, 2010, the plaintiff became uninsured and therefore went to Cooper Green Hospital for medical care (R. 495).

Based on the foregoing, the ALJ determined that the plaintiff's severe impairments were degenerative disc disease in lumbar spine, status post thyroid cancer, and asthma (R. 18). He determined the plaintiff's hypertension, past addiction issues, bipolar disorder, gastroesophageal reflux disease and obesity were non-severe impairments (R. 22). He found that she did not have an impairment or a combination

of impairments which met or medically equaled one of the listed impairments in 20

C.F.R. Part 404, subpart P, Appendix 1 (R. 23).   The ALJ considered various

Listings, found them not applicable, and concluded that the plaintiff could perform

a limited range of sedentary work with mild to moderate pain (R. 25).   The ALJ

reaches this conclusion by finding none of the plaintiff's treating physicians opined

that the plaintiff's limitations were "so 'severe' as to be disabling" (R. 26-29).   He

therefore found the plaintiff could perform unskilled sedentary work such as clerical

order clerk, final assembler, and inspector/sorter, all of which exist in substantial

number in the state of Alabama and in the nation as a whole (R. 30).

Therefore, the ALJ found that the plaintiff was not under a disability at any

time through the date of his decision.

The plaintiff argues that the opinion of the ALJ is not supported by substantial

evidence because the ALJ failed to give proper weight to the plaintiff's treating

physician, failed to properly develop the record, and failed to include non-severe

impairments in his residual functional capacity findings.

### Standard of Review

In a Social Security case, the initial burden of establishing disability is on the

claimant, who must prove that due to a mental or physical impairment he is unable

to perform his previous work.   If the claimant is successful the burden shifts to the

Commissioner to prove that the claimant can perform some other type of work existing in the national economy.  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the  correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990).  "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision.  *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir.1987).  "Even if the Court finds that the evidence weighs against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence."  *Allen v. Schweiker*, 642 F.2d

799,800 (5th Cir.1981); *see also Harwell v. Heckler*, 735 F.2d 1292 (11th Cir.1984); *Martin v. Sullivan*, 894 F.2d 1520 (11th Cir.1990).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987). When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect

they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ determined that the plaintiff had the residual functioning capacity to perform a limited range of sedentary work activity. The ALJ considered each of the plaintiff's treating physician's opinions, but concluded for each that there was no notation in the medical records that the plaintiff's various impairments were "so 'severe' as to be disabling" (R. 26). However, the record does establish that the plaintiff's treating physicians were aware the plaintiff was not presently working, that she had been removed from work by her doctor, and was in a dispute with Workers' Compensation.

The Social Security Administration recognized this in its finding of December 5, 2008, where it concluded

> We have determined that your condition is not expected to remain severe enough for 12 months in a row to keep you from working. In deciding this we considered the medical evidence, your statements and how your condition affected your ability to work.

> You state you became disabled on retail manager (sic) because of back problems. It is noted in the medical records that you have amental (sic) condition. The evidence indicates your condition(s) is severe and keeps

14

you from working at the present time. However, in order to be eligible for disability benefits, a condition must keep you from doing work for twelve (12) consecutive months. Although you are unable to do any work at this time and will not be able to return to your past job(s), you should be able to do certain types of work within twelve (12) months from the onset of your condition(s)....

(R. 71).

By footnote, the Commissioner asserts that the non-treating, non-examining physician opinion of December 5, 2008, given by Dr. Marcus Whitman, provides substantial evidence that the plaintiff did not meet the durational requirements as of October 2008. Commissioner's response at 10 n.6. In support, the Commissioner cites to the plaintiff's application for benefits (R. 100); a "Physical Summary" dated October 28, 2008, signed by Dr. Whitman, which states in full "I have marked RFC; please complete." (R. 398); and a physical RFC, dated December 5, 2008, signed by "Cynthia Childress" with the notation "RATED BY DR WHITMAN" (R. 445-52). The Commissioner states that Dr. Whitman's conclusions were based upon his evaluation of plaintiff's medical records through September 2008. Response, at 10.

Thus, taking the above evidence as a whole, the Commissioner found the plaintiff was unable to work as of December 5, 2008, but could return to work at some point before May 2009 based on records reviewed by Dr. Whitman through September 2008 and Dr. Whitman's October 2008 RFC which found the plaintiff could perform a limited range of sedentary activities. The ALJ gave great weight to

the opinion of Dr. Whitman, finding the medical records received after his review were not incompatible with his opinion (R. 29). Given that the plaintiff bore the burden of establishing the continuation of her limitations for twelve months, the court finds the records which reflect the plaintiff did not improve after December 2008 to be completely contradictory to Dr. Whitman's prospective opinion regarding the plaintiff's return to work.

An RFC is an assessment based on all relevant evidence of a plaintiff's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). For an RFC to contain a valid assessment, the ALJ must focus on physicians' evaluations of a plaintiff's condition and the medical consequences thereof. *Id.* In evaluating a plaintiff's RFC, the ALJ must consider all of a plaintiff's impairments, including subjective symptoms such as pain. 20 C.F.R. § 404.1529.

Without wholly rejecting the plaintiff's treating physicians' opinions, the ALJ accepted Dr. Whitman's October 2008 RFC in toto. To do so, the ALJ only gave "some weight" to the opinion of plaintiff's treating physician Dr. Maher, and further discounted Dr. Maher's opinion that the plaintiff was unable to work as being without a basis (R. 28). However, Dr. Maher's records reflect the plaintiff had a completely collapsed disc in her back and had "pretty severe limitation of movement" and severe

back pain with any activity (R. 462). Dr. Maher recommended a disc fusion, and again sought approval from workers' compensation (R. 462, 487).  A note in the record from September 2009 reflects that the plaintiffs "case is tied up right now with lawyers..." (R. 494).  There is no evidence that the collapsed disc in her back improved at any time from December 2008, when the Commissioner recognized that the plaintiff was unable to work, through the date of the ALJ's decision.[3]

The ALJ also gave "considerable weight" to Dr. Poczatek, who treated the plaintiff from 2005 when she first injured her back until August 2008 when he referred her to Dr. Maher, his associate.  Those records reflect in part that, in April 2008, the plaintiff reported she still had pain at a 9 out of 10 level (R. 205).  Dr. Poczatek recommended plaintiff have a TENS unit and bracing to see if that reduced her pain (R. 205).  Following her fall in May 2008 the plaintiff was again sent for an MRI which found mild degenerative changes and right foraminal disc herniation at L4-5, the right L4 nerve root sheath was significantly displaced, and there was a slight bulge at L5-S1 with mild to moderate left foraminal narrowing at that level (R. 207-208).  Dr. Poczatek recommended the plaintiff return to Dr. Maher for surgical intervention (R. 209).  Dr. Poczatek prescribed narcotic pain medication and stated

---

[3]Had plaintiff obtained the disc fusion as recommended by Dr. Maher prior to May 2009, the December 2008 finding that the plaintiff's disability would not last for more then twelve months would then be logical.

he would keep the plaintiff off work until she was seen by Dr. Maher (R. 209-210). There is no support in these records for the ALJ's conclusion that the Dr. Poczatek's opinions are consistent with his finding that the plaintiff does not have an impairment so "severe" as to be disabling (R. 28).  Rather, Dr. Poczatek removed the plaintiff from work and recommended surgery. Although afforded different weights by the ALJ, Dr. Poczatek and Dr. Maher's opinions clearly support each other.

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)," a treating physician's medical opinion is due to be afforded great weight so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).   Under Eleventh Circuit precedent, the ALJ must provide "good cause" for rejecting a treating physician's medical opinions. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir.2011) (Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight."); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).  Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241).   The fact that the treating physician's opinion is contradicted by a non-examining physician is not good cause for rejecting the treating physician's opinion in favor of the non-examining physician's opinion. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988) ("The opinion of a non-examining physician is therefore entitled to little weight when it contradicts the opinion of an examining physician").   Here, two of plaintiff's treating physicians found her unable to work during the time period that the plaintiff alleges she became unable to work.   The non-treating, non-consulting opinion of Dr. Whitman does not provide "good cause" to reject these opinions.

The Commissioner also points to evidence that in November 2009 and March 2010, the plaintiff rated her pain on various medical reports as ranging between a 4 and 7.  Commissioner's response, at 11.  These reports do not provide support for the ALJ's finding that the plaintiff suffers only minimal to moderate pain.

Multiple treating physicians examined the plaintiff and none of them opined she was exaggerating her pain. For example, on September 4, 2008, the plaintiff was seen by Dr. Sean O'Malley, who noted that plaintiff's MRI reflected "significant collapse of the L4-5 disc with edema in the bone" (R. 240, 248).  He opined this was the result of either infection, which he doubted, or severe degenerative change (R.

240, 241).  She was seen again five days later, with persistent pain and commented that the brace was not helping anymore (R. 238).  In April 2009  Dr. Maher noted that the plaintiff had "pretty severe limitation of movement" and severe back pain with any activity (R. 462).  Dr. Maher again recommended a disc fusion, but also discussed pain management with the plaintiff (R. 462).

The court has before it several statements of the plaintiff's treating physicians that the plaintiff is physically unable to perform any work.  The court finds the ALJ rejected these opinions without good cause, resulting in an opinion that is not based on the substantial evidence of record.  As previously stated, the evidence before the court establishes that as of December 5, 2008, the Commissioner entered a finding that the plaintiff could not perform any work activity.  The plaintiff established through medical records post-dating that determination that she had not improved.[4] In fact, the records suggest her back pain became more severe.  Thus, the conclusion that although disabled, such disability would not last 12 months is wholly without any

---

[4]In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *Bowen,* 482 U.S. at 146 n. 5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir.1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

Of course, given the plaintiff's burden to provide such evidence, the Commissioner must have the burden to consider such evidence.

foundation in the record.  Unfortunately, the ALJ did not address this finding of the Commissioner at all, or address that the opinion of Dr. Whitman, which found the plaintiff could perform sedentary work, was dated the same as the Commissioner's finding that the plaintiff's condition was severe and kept her from working.  Given that this was evidence of record, and given that the plaintiff submitted substantial evidence supporting a finding that her treating physicians believed the plaintiff was unable to work because of the severity of her back pain, the ALJ's failure to address these findings was error.[5]

Remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Commissioner of Social Security*, 265 F.3d 1214, 1219 (11th  Cir.2001).   Upon remand, the Commissioner may hold

---

[5]The ALJ's finding that the plaintiff is not disabled based on her daily activities reflects further misapplication of the law by the ALJ.. The evidence establishes the plaintiff drives her mother home from work each day, drives herself to the doctor, and goes to the store.  Her friend reported that the plaintiff needed help to dress and bathe (R. 152), but the ALJ found that contradicted by the fact that the plaintiff currently lived alone. She was unable to comb her hair but the ALJ found that the plaintiff overcame this limitation by wearing her hair in a simple braid.  Although the ALJ noted the plaintiff took care of her house, the evidence established her mother and nephew did chores, and while the plaintiff could do some things, she rested between chores (R. 27-28, 50).  Additionally, the plaintiff testified all she did each day was watch TV and pick up her mother (R. 49-50).  She attended housing meeting because she had to for public housing (R. 50).  Plaintiff also explained she kept a "pot" on the side of her bed because she is unable to make it to the bathroom when she first wakes up (R. 131), and listed one of her activities "sitting on her porch when weather permits" (R. 131).  As for going to the store, the plaintiff reported standing at the store was difficult, she went one time a month, and she ate cereal or sandwiches, or her mother cooks for her (R. 132, 134).  This Circuit has recognized that "participation in everyday activities of short duration, such as housework or fishing, [should not disqualify] a claimant from disability." *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir.1997).

other proceedings as he deems necessary, but in any event shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law, re-weigh the opinion evidence, and give the appropriate weight to the opinion of state agency examining physician, Dr. Whitman and plaintiff's treating physicians.

Specifically, the Commissioner shall determine whether the plaintiff's inability to work, as documented by the Commissioner in December 2008, continued for twelve months, based on the substantial medical records provided by plaintiff's treating physicians.

### Conclusion

For the above stated reasons, it is **ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency for further action consistent with this opinion, as set forth herein.

**DONE** and **ORDERED** this the 14th day of March, 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

22